UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANIETTA C. PETITT,<br><br>    Plaintiff,<br><br>  v.<br><br>EXIGENCY HEALTHCARE SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-07639-VKD<br><br>**ORDER APPROVING SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 27 |

  Plaintiff Anietta Petitt sued defendants Exigency Healthcare Services, LLC ("Exigency"), Felixberto Matamis, and Karen Panilio. Dkt. No. 1.[1] Defendants employed Ms. Petitt and others as caregivers for the elderly. *Id.* ¶ 20. In this action, Ms. Petitt asserts one claim for violation of the Fair Labor Standards Act, *id.* ¶¶ 32-40, and seven claims for violations of the California Labor Code, *id.* ¶¶ 41-91. The complaint also includes a representative claim for payment of civil penalties under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698 *et seq. Id.* ¶¶ 92-105. Ms. Petitt and defendants have settled all claims, and seek the Court's approval of the settlement agreement.[2] Dkt. Nos. 27, 30.

  On December 20, 2022, the Court held a hearing on Ms. Petitt's motion. Dkt. No. 33. At the hearing, the Court raised several questions regarding the parties' agreement and ordered Ms. Petitt to submit supplemental briefing. *See* Dkt. No. 34. Ms. Petitt did so on January 27, 2023. Dkt. No. 36. In consideration of the parties' moving papers, supplemental briefing, and

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 12.

[2] Ms. Petitt filed a motion for approval of the settlement, Dkt. No. 27, and defendants filed a statement of non-opposition to Ms. Petitt's motion for approval, Dkt. No. 30.

1  representations made at the hearing, the Court grants Ms. Petitt's motion for approval of the
2  settlement, and awards attorneys' fees in the amount of $48,000 and costs in the amount of
3  $2,805.57.

**I.     BACKGROUND**

Exigency is owned and operated by defendants Felixberto Matamis and Karen Panilio. Dkt. No. 1 ¶¶ 18-19. Ms. Petitt alleges that she worked as a non-exempt employee providing care for elderly clients. *Id.* ¶¶ 12, 21. She alleges that Exigency misclassified her and her fellow workers as independent contractors rather than employees. Dkt. No. 1 ¶ 28. Ms. Petitt further alleges that Exigency violated state and federal labor laws by failing to pay overtime, failing to provide compliant meal and rest periods, failing to timely pay all wages owed employees, failing to provide compliant wage statements, and failing to reimburse employees for expenses incurred while working. *Id.* ¶¶ 5-9.

Ms. Petitt says that on July 1, 2021 she notified the Labor and Workforce Development Agency ("LWDA") of the alleged violations of California's Labor Code. *Id.* ¶ 12. She also sent a copy of the notice provided to the LWDA to defendants. *Id.* ¶ 13. On September 29, 2021, Ms. Petitt filed this action. *Id.* Since then, Ms. Petitt's counsel attests that Ms. Petitt has investigated her claims through discovery. Dkt. No. 27-1 ¶¶ 6-11. Defendants have produced pay and time records for Ms. Petitt and other workers. *Id.* ¶ 7. From the records produced, Ms. Petitt's counsel prepared an audit of Ms. Petitt's individual claims and corresponding PAGA penalties, and determined the overall exposure and risk associated with this case. Dkt. No. 36-1 ¶¶ 7-9. In June 2022, the parties participated in mediation, *id.* ¶ 8, and through that process the parties reached the agreement now before the Court, *id.* ¶ 9.

The total amount of the settlement is $160,000. Dkt. No. 27 at 6. That amount is comprised of a $65,000 payment to Ms. Petitt, to settle her individual claims for unpaid wages and liquidated damages under the FLSA and California law. *Id.* The settlement next allocates approximately $34,000[3] for penalties pursuant to PAGA, with 75% of the penalties going to the

---

[3] Ms. Petitt notes that the final amount will be calculated as the amount remaining after her

LWDA, and 25% of the penalties going to the aggrieved workers. *Id.* The 25% paid to aggrieved workers will be allocated based upon the number of pay periods worked during the relevant period. *Id.* The settlement agreement allocates up to $53,328 in attorneys' fees, subject to the Court's approval, and up to $6,000 in costs to be paid to Ms. Petitt's counsel. *Id.*; *see also* Dkt. No. 27-1 ¶ 3.04(b)(i). Finally, the settlement agreement provides for up to $10,000[4] to be paid to Phoenix Class Action Administration to distribute any settlement funds to the State of California and any other aggrieved workers. *Id.* at 12.

While Ms. Petitt brings her FLSA claim only on her own behalf, she brings her claim under PAGA "on behalf of the State of California . . . and other current and former aggrieved employees." Dkt. No. 1 ¶ 2. After amending their settlement agreement in conjunction with Ms. Petitt's supplemental briefing, the parties now define the period covered by Ms. Petitt's PAGA claim as beginning on September 29, 2020 (one year prior to the date Ms. Petitt filed her complaint) and ending on October 31, 2021. Dkt. No. 36 at 4; Dkt. No. 27-1 ¶ 1.01(b). The parties' settlement agreement defines "Aggrieved Employees" as "all persons, including Plaintiff, who worked with, by or through Defendants, and/or were employed by Defendants in a caregiver position, performing caregiver duties, in California at any time" during the covered period. Dkt. No. 27-1 ¶ 1.01(c); Dkt. No. 36 at 4-5. According to Ms. Petitt's counsel, there are approximately 112 employees in the PAGA settlement pool. Dkt. No. 36-1 ¶ 6.

## II. DISCUSSION

### A. Ms. Petitt's FLSA Claim

Because an employee's claims under the FLSA are nonwaivable, they may not be settled without supervision of either the Secretary of Labor or a district court. *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333–34 (N.D. Cal. 2014) (citing *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)). "If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, the district court may approve the settlement in order to promote the

---

individual claim, costs, attorneys' fees, and administration costs are paid. Dkt. No. 27 at n.5.

[4] The fund administrator estimates the costs of administration to be only $4,500. Dkt. No. 27 at 12.

3

policy of encouraging settlement of litigation." *Id.* (cleaned up) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Lab.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). "Courts in this district typically evaluate a FLSA settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores*, which requires the settlement to constitute 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Hernandez v. Dutton Ranch Corp.*, No. 19-CV-00817-EMC, 2021 WL 5053476, at *3 (N.D. Cal. Sept. 10, 2021) (quoting *Lynn's Food Stores*, 679 F.2d at 1355 (11th Cir. 1982). A bona fide dispute exists when there are legitimate questions about the existence and extent of a defendant's FLSA liability as there must be "some doubt . . . that the Plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

Here, the Court finds that a bona fide dispute exists as to Ms. Petitt's FLSA claim and the amount of overtime wages she may be owed. Ms. Petitt alleges that she qualifies as an employee under the FLSA, and that defendants failed to pay her overtime wages to which she was entitled, while defendants "routinely" required or permitted her to work more than forty hours per week. Dkt. No. 1 ¶¶ 5, 35. Defendants dispute that Ms. Petitt is entitled to overtime compensation or that they failed to pay her what she says she is owed. Dkt. No. 8 ¶¶ 30, 107. The parties also dispute whether Ms. Petitt is entitled to any remedies under the California Labor Code for overtime, meal period, and rest break premiums, or whether she falls under the "personal attendant" exemption. *See* Cal. Labor Code § 1454. Ms. Petitt notes that the amount of her potential recovery under the California Labor Code is less than the amount of her potential recovery under the FLSA. *See* Dkt. No. 36 at 2.

The Court finds that the settlement is a fair and reasonable compromise of Ms. Petitt's FLSA claim. Ms. Petitt was paid an hourly rate of $18-$20 depending on her assignment for all hours worked; she does not contend that she was ever paid less than minimum wage. However, she says that she is entitled to unpaid overtime wages in the amount of $41,859.46. If she were to prevail on her overtime wages claim, she would be entitled to liquidated damages in an amount

4

equal to the amount of her lost pay. Dkt. No. 27 at 9; Dkt. No. 36 at 2; 29 U.S.C. § 216. In sum, the maximum total amount to which Ms. Petitt would be entitled under the FLSA is $83,718.92. The settlement agreement allocates $65,000 to Ms. Petitt for her individual claims under FLSA and the California Labor Code, and this represents approximately 77.6% of her maximum recovery on her FLSA claim. The Court concludes that this amount is fair and reasonable. *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324-JST, 2017 WL 3834873, at *1 (N.D. Cal. July 25, 2017) (noting that courts in this district have concluded that settlements are favorable when they are between 70 and 100 percent of a plaintiff's FLSA damages and collecting cases).

The Court further finds that the release of claims in the settlement agreement is reasonable and not broader than necessary. While the settlement agreement includes a general release of Ms. Petitt's claims, including a waiver of her rights under California Civil Code section 1542, "voluntarily waiving rights under Section 1542 of the California Civil Code is a common and accepted practice in this District." *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11, 2020); *del Toro Lopez v. Uber Techs., Inc.*, No. 17-CV-06255-YGR, 2018 WL 5982506, at *1, *25 (N.D. Cal. Nov. 14, 2018) (granting final approval of a FLSA class action settlement, which included released claims and rights under California Civil Code Section 1542).

### B.     Ms. Petitt's PAGA Claim

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). "Accordingly, a judgment in a PAGA action binds not only the plaintiff, but also the government and nonparty aggrieved employees." *Eisenacher v. VITAS Hospice Servs. LLC*, No. 20-cv-04948-RS, 2021 WL 1846574, at *2 (N.D. Cal. Apr. 2, 2021). Under PAGA, a trial court must review and approve any settlement of PAGA claims. Cal. Labor Code § 2699. Additionally, the proposed settlement must be submitted simultaneously to the California Labor and Workforce Development Agency ("LWDA"). *Id.*

1  Even though court approval of PAGA settlements is statutorily required, PAGA does not
2  provide express guidance about the scope or nature of judicial review. In the absence of binding
3  guidance, federal district courts reviewing PAGA settlements have drawn on factors utilized by
4  the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), which are used to
5  evaluate whether a class action settlement is "fundamentally fair, adequate, and reasonable." *See*
6  *O'Connor v. Uber Techs.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016); *see also Moniz v. Adecco*
7  *USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) ("[A] trial court should evaluate a PAGA settlement to
8  determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate
9  present labor law violations, deter future ones, and to maximize enforcement of state labor laws.").
10 "These factors are evaluated in light of PAGA's public policy goals of 'benefit[ing] the public by
11 augmenting the state's enforcement capabilities, encouraging compliance with Labor Code
12 provisions, and deterring noncompliance.'" *Eisenacher*, No. 20-CV-04948-RS, 2021 WL
13 1846574, at *2 (quoting *O'Connor v. Uber Techs. Inc.*, 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal.
14 2016)).

15  As a preliminary matter, the Court finds that Ms. Petitt has satisfied the statutory
16 requirement of submitting the proposed settlement agreement to the LWDA. Dkt. No. 27-1 ¶ 2;
17 Cal. Labor Code § 2699.

18  The Court further finds that the *Hanlon* factors and PAGA's public policy goals support
19 approval of the settlement. Ms. Petitt represents that while she believes her theory of liability is
20 strong, further litigation presents a considerable risk. Exigency is not a large company and
21 operates on a small profit margin, and the individual defendants have limited means and assets.
22 Dkt. No. 27 at 8; Dkt. No. 35-3. Ms. Petitt advises that $160,000 represents the limit of what
23 defendants are able to pay if the litigation were to proceed to a conclusion on the merits. Dkt.
24 No. 27 at 8. Ms. Petitt's counsel attests that through formal and informal discovery Ms. Petitt had
25 identified the pay records of 112 employees within the scope of the PAGA claim. Dkt. No. 27-1 ¶
26 34. Ms. Petitt's counsel further states that the settlement amount for this claim reflects a
27 compromise based on counsel's experience, and that it also reflects the likelihood of success on
28 this claim, considering the costs of further litigation and defendants' financial condition. The

Court finds that the settlement amount of approximately $34,000 for Ms. Petitt's PAGA claim is fair and reasonable in the circumstances. It is also substantial enough to deter future violations of the Labor Code provisions. In this regard, the Court notes that after Ms. Petitt filed this action, defendants reclassified their workers as "employees" rather than independent contractors and corrected their pay scheme to align it with California's Labor Code requirements. Dkt. No. 27 at 8; Dkt. No. 36 at 4.

For these reasons, the Court approves the settlement amount attributable to the PAGA claim.

### C.     Attorneys' Fees and Costs

The FLSA, the California Labor Code, and California's PAGA statute all provide for the recovery of reasonable attorneys' fees and costs for a prevailing employee. *See* 29 U.S.C. § 216(b); Cal. Labor Code §§ 2802, 218.5, 226(e), 1194, 2699(g)(1). Where a settlement produces a common fund for the benefit of an entire class the court has discretion to award fees using either a "percentage-of-recovery" or a "lodestar" method. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).[5]

Here, Ms. Petitt requests $53,328 in attorneys' fees. Ms. Petitt's counsel represents that, if the Court were to employ the lodestar method (i.e., multiplying an attorney's reasonable hourly rates by the number of hours reasonably spent working on a matter) Ms. Petitt would be entitled to fees in the amount of $63,385. This lodestar amount is based on an hourly rate of $425 per hour multiplied by 118.6 hours on this matter for Mr. Rusnak, and $550 per hour multiplied by 23.6 hours on this matter for Ms. Rusnak.[6]

Courts in this district routinely find that allocating a portion of the common fund is

---

[5] PAGA does not provide a specific standard for evaluating attorneys' fees in connection with settlement of PAGA claims. However, at the hearing and in supplemental briefing, the parties agreed that the "lodestar" method is an appropriate method for evaluating attorneys' fees. *See also Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *6 (N.D. Cal. Aug. 25, 2017).

[6] The Court notes that in Ms. Petitt's counsel's declaration a rate of $625 per hour is listed for Ms. Rusnak, while in the papers it lists $550 per hour. The Court here relies on the lower rate of $550 per hour.

appropriate for attorneys' fees in similar disputes, including those involving PAGA claims. *See, e.g.*, *Hernandez*, 2021 WL 5053476, at *3. The benchmark for an award of attorneys' fees in the Ninth Circuit is 25% of the common fund, with fees awards typically in the range of 20% to 30% of the common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Here, plaintiff seeks an award of $53,328 in attorneys' fees, representing over 33% of the total settlement amount. While the recovery attained in this case represents a substantial percentage of the total estimated value of Ms. Petitt's claims, and the total fees actually incurred exceed $63,000, Ms. Petitt provides insufficient justification for a fee award that exceeds the benchmark by more than 8 percentage points. While Ms. Petitt's counsel submitted a declaration summarizing the time spent working on this claim, no actual billing records were submitted for the Court to compare the summarized hours to any contemporaneous records. *See* Dkt. No. 27-1 ¶ 28. Additionally, while Ms. Petitt's counsel states that the rates for Mr. Rusnak and Ms. Rusnak differ, no evidence, such as contemporaneous billing records, is provided that specifically attributes any work to either attorney. *See id.* ¶ 27. Finally, the rates sought exceed the rates at which other courts have, in fact, awarded fees to Ms. Petitt's counsel. *See id.* ¶¶ 22-23. Thus, instead of 33% of the total settlement fund, the Court finds that the attorneys' fee award should not exceed $48,000, or 30% of the total settlement amount.

Ms. Petitt has adequately supported her request for an award of costs in the amount $2,805.57.

### III.  CONCLUSION

For the foregoing reasons, the Court grants Ms. Petitt's motion and approves the parties' settlement agreement. The court awards attorneys' fees in the amount of $48,000 and costs in the amount of $2,805.57 to Ms. Petitt's counsel.

**IT IS SO ORDERED.**

Dated: March 2, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge